**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Case No.  1:21-cr-00364-DLF** |
| | * | |
| **ESTHER SCHWEMMER,** | * | |
| **Defendant** | * | |

**ESTHER SCHWEMMER'S SENTENCING MEMORANDUM**

Esther Schwemmer, by her undersigned counsel, hereby submits the following memorandum in aid of sentencing in this matter.  As more fully set forth below, Ms. Schwemmer is among the least culpable group of defendants who walked into the Capitol building.  She came to a political rally in Washington, DC with a friend, who like her, had never been convicted of an offense.  Ms. Schwemmer did not engage in any violence, did not cause any damage to property, and did not advocate violence or promote any debunked conspiracy theories on social media, before or after January 6.  She has sincerely and promptly accepted responsibility for her part in the chaos that erupted at the United States Capitol on January 6.  Based on all of the facts and circumstances, Ms. Schwemmer respectfully requests that the Court impose the same sentence imposed on her friend by Judge Nichols and on similarly situated defendants who have been convicted of the same misdemeanor – a period of probation.[1]  Such a sentence is "sufficient, but not greater than necessary" to promote the purposes of sentencing as required by 18  U.S.C. § 3553(a).  A sentence that does not include a term of imprisonment is also consistent with the Probation Officer's recommendation. *See, e.g.* Sentencing Recommendation (ECF 27).

---

[1] Ms. Schwemmer's companion at the United States Capitol on January 6, 2021 was Jennifer Parks, who has been convicted and sentenced for the same petty offense in *United States v. Parks*, No. 21-cr-00363-CJN.

### INTRODUCTION

Ms. Schwemmer is a 56-year old young woman, who until the instant offense, has lived a law-abiding exemplary life.  She is married, with a grown child, who has devoted her life to her family, hard work and volunteer activities through her church.  She has no prior convictions or arrests.  Indeed, other than a traffic infraction, she has no prior contacts with law enforcement.

Ms. Schwemmer entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), for her participation in the events on January 6, 2021, which carries a maximum sentence of 6 months' imprisonment. On that day, she attended the "Save America" political rally, where then-President Trump encouraged listeners to march to the Capitol to make their voices heard. After the rally, Ms. Schwemmer, along with thousands of other individuals attending the rally, walked over to the Capitol building and was swept up with the intense political emotions of the day.  She entered inside the Capitol through an open door and remained inside for approximately 15 minutes.  Ms. Schwemmer did not participate in any violence or destruction of property at any time. Ms. Schwemmer will appear for sentencing on January 10, 2022.  She has reviewed the Pre-Sentence Investigation Report and does not have nay material corrections to its contents.

From the start, Ms. Schwemmer has accepted responsibility for her conduct.  She voluntarily spoke to the FBI when she was first approached and granted permission to access her smart phone. Within weeks of her arrest and counsel's appointment, she reached out through counsel to resolve the case without a trial.  She has had perfect compliance during the period of pretrial release.

Ms. Schwemmer entered the United States Capitol through an already opened door, once she believed that her entry would be peaceful.  The CCTV videos the government has produced to

the Court show that while inside Ms. Schwemmer and Ms. Parks walked through the Capitol, at one time stopping near a bust of Winston Churchill and took pictures of themselves, while Capitol Police officers stood by allowing them to walk around peacefully. In sum, she is among the least culpable group of defendants who walked into the Capitol building. She has sincerely accepted responsibility for her conduct, is remorseful and embarrassed for her part in the chaos that developed on that day. The Court may be assured that she will never again participate in such conduct.

## ARGUMENT

### I.     Legal Standard

Congress requires federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing.

> Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by what is known as the parsimony principle, a broad command that instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation.

*Dean v. United States*, 137 S.Ct. 1170, 1175 (2017) (internal citations omitted). A sentence that is "greater than necessary" is substantively unreasonable. *Holguin-Hernandez v. United States*, 140 S.Ct. 762, 766-67 (2020).

The Court must also consider:

> the nature and circumstances of the offense
>
> the history and characteristics of the defendant
>
> the kinds of sentences available
>
> the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a)(1), (a)(3) and (a)(6).  However, in this case, the Court need not consider the

pertinent Sentencing Commission guidelines and policies (under §§ 3553(a)(4), (5)) because the

Guidelines do not apply to Class B misdemeanors.[2]

## II.     A Sentence of Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18 U.S.C. §3553(a).

### A.     Ms. Schwemmer's Personal History and Characteristics

As noted above, Esther Schwemmer is a middle-aged married woman, whose conduct in the

instant case does not reflect who she is or how he has lived his life.  She married her husband in in

1984, while he served in the United States Army in Europe.  They have one adult child.  They moved

to the United States in 1990.  During their married life, the family moved often because of his service

assignments and during his deployments.  Her husband is now a civilian employee of the Department

of Defense and plans to retire this year.  With retirement in mind, they have sold their home and are

now living in a rental residence.  Once retired, they had planned to travel throughout the United

States in an RV.

Esther Schwemmer is a kind and hard-working person, a good friend, who has contributed

to her community through volunteer activities.  She has never been arrested or been convicted of any

criminal offenses.  A naturalized American citizen, she was born in Germany and spent her

childhood years in a post-World War II refugee camp in Esslingen, a small town in Baden-

Wuerttemberg in southern Germany.  Her parents and her nine siblings lived in "dirt poor"

---

[2] "The sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction." U.S.S.G. § 1B1.9.   "A Class B misdemeanor is any offense for which the maximum authorized term of imprisonment is more than thirty days but not more than six months." *Id*., application n. 1.

4

conditions but she nonetheless had a good childhood.  Her father passed away when she was 10 years old, and her mother supported the family as a seamstress.  Her mother passed away in 2001.  She attended high school in Germany but obtained her GED in the United States.  She had been a licensed cosmetologist for nearly 20 years until she retired last year.

In addition to working and raising a family, she has devoted herself to her to volunteer activities with homeless persons, where she once started a soup kitchen.  She also has devoted many hours to working with shelter animals.  The letters, attached herewith as exhibits, all describe Esther as a caring person and a good friend, who gives of herself to others.

> Eleven years ago when my husband of over thirty years passed away, I had a friend who quietly stepped in and helped me through this most difficult time by providing a shoulder to cry on, assistance with sorting and disposing of his things, meals when I didn't have the energy to cook, and comforting words from the Bible.
>
> Esther Schwemmer is a strong woman who had a less than desirable childhood growing up in Germany under a strict and abusive father. As a young woman she married an American Soldier and together they had a family. As an Army wife she made many sacrifices. Her husband brought her to the U.S. and she worked hard to learn the language, the customs, and the work ethic to succeed. She put herself through cosmetology school and had a long successful career.  Many people in our community were sad when she recently retired.
>
> When the time was right, she studied hard and took the test to become a U. S. citizen. That was one of her proudest days. She is a fiercely loyal friend and advocate for those that cannot protect themselves - homeless people, friends in crisis, and animals that need caring and love.
>
> Many years ago Esther started a soup kitchen through her local church and devoted countless hours to shopping, planning, cooking, and serving those less fortunate in our community.

5

> Esther is a wonderful wife, a loving mother, a sister to many, and a true friend to the small circle of those of us lucky enough to be part of her life.

Letter from Cynthia Keefer Patton, attached as Exhibit 1.[3]

> Another friend, speaks similarly about Esther Schwemmer's giving nature:

>> Esther is her mother's daughter.  When her mother was a teen-ager, she almost became victim to Hitler's "Final Solution to rid the world of Jews." The Catholic Church in Germany helped them before her family was herded into a concentration camp.  Her mother taught her the value of helping others with empathy and sympathy.

>> A case in point, Esther founded and operated a soup kitchen in downtown Leavenworth. If the St. Mary's University could not provide food, she purchased it herself and cooked it before she would see anyone go hungry. We teamed together to consistently feed the homeless, helpless, and less fortunate.

>> Esther can be trusted to show-up in large and small ways. If I need anything, Esther is right there to meet the need.

>> Honestly, many people have a desire to make a difference in the world, yet there very few who will get their hands dirty doing it. If you want to get something done, and done right, then Esther is the person to call.

Letter from Christine Malkemes, attached as Exhibit 2.

## B.   Nature and Circumstances of the Offense

Ms. Schwemmer accepted responsibility for the offense as soon as law enforcement interviewed her at her home.  She answered their questions and granted authority to access her phone.  She admitted that she entered the Capitol Building with her friend.

---

[3]  The letters have been redacted to delete addresses and phone numbers in an attempt to preserve privacy and prevent harassment and hate mail that have been directed at persons who become associated with January 6 cases.

Ms. Schwemmer entered the Capitol, through an open door and remained within for approximately 15 minutes. She did not come to D.C. to disrupt the proceedings in Congress or to participate in the chaotic scene that developed. She was swept along with the crowd but did not participate in any violence or destruction of property at any time during her trip to the District of Columbia to attend a political rally.

As noted by the letters submitted to the Court and by the absolute lack of any prior arrests, convictions or other contacts with law enforcement, Ms. Schwemmer's condut on January 6, was completely out of Ms. Schwemmer's good character that she has exhibited throughout her life. Neither before nor after January 6, has Ms. Schwemmer advocated violence or conspiracy theories on social media. She is not a member of any organizations that have promoted any violence.

Ms. Schwemmer is deeply embarrassed and mortified by her conduct on January 6. She regrets the loss of life on January 6 and how her participation in the events on that day affected the Capitol Police and the members of Congress and their staff, who were injured and frightened by the events. Though she never intended those consequences, she recognizes that her presence contributed to the chaos.

.     **C.     The Kinds of Sentences Available**

The offense to which Ms. Schwemmer has pleaded guilty, which carries a statutory maximum of six-months imprisonment is designated a petty offense under the Criminal Code.[4]   As a Class B misdemeanor, a term of probation, with conditions that may include community service is also authorized. 18 U.S.C. § 3563(b)(12).

---

[4] An offense for which the maximum penalty is "six months or less but more than thirty days" is a Class B misdemeanor. *See* 18 U.S.C. § 3559(a)(7). In turn, Class B misdemeanors are defined as a "petty offense" under 18 U.S.C. § 19.

**D.     Just Punishment, Deterrence, and the Need to Avoid Unwanted Sentencing Disparities**

The request for a term of probation acknowledges the need to promote respect for the law and provide just punishment as well as the fact that the offense is designated a petty offense under the United States Code.  It reflects that Ms. Schwemmer herself did not engage in any violent conduct or destruction of property.  As a first time offender with no prior contact with law enforcement and given her history and characteristics and remorse, there is zero likelihood that she will recidivate.  Furthermore, a sentence of probation is in line with the sentence imposed on her friend, who traveled to the District of Columbia with her and with similarly situated defendants.

For example, in *United States v. Danielle Doyle*, 1:21-CR-324 (TNM), the court imposed a sentence of 2 months' probation. Like Ms. Schwemmer, the defendant in that case walked through the building for about 20-25 minutes with no incident and left. However, Ms.  Schwemmer is less culpable than Mrs. Doyle because she did not climb through a broken window like Mrs. Doyle did to enter the Capitol. This case is more similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) where the court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.

A number of cases reflect that imposing a term of imprisonment on Ms.  Schwemmer would result in unwarranted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6) because Ms. Schwemmer's conduct and clear remorse contrast with the more lenient sentences imposed in those cases.  For example, the Court in *United States v. Jonathan Sanders*, 1-21-CR-384 (CJN), Judge Nichols imposed 36 months' probation for a defendant who had no criminal history, however

showed a lack of remorse to the FBI during a recorded interview. In that case, the government recommended that the defendant serve two of those months on home detention, however the court imposed 60 hours of community service instead. Similarly, in *United States v. Jordan Stotts*, 21-CR-272 (TJK), the court imposed 24 months' probation for a defendant who shouted at MPD officers and posted comments following January 6 suggesting he may not have been remorseful for his actions. In a non-January 6 case, Judge Cooper imposed 12-month terms of probation in cases where several defendants took turns shouting during a Supreme Court argument with the intent to disrupt the proceedings. *See, e.g., United States v. Bronstein,* No. 15-cr-00048-CRC.[5]

Similarly, in *United States v. Bustle*, No. 21-cr-00238-TFH, Judge Hogan imposed a term of 24-months' probation notwithstanding Ms. Bustle's social media postings:

> Before traveling to the Capitol, [Ms. Bustle] posted a message that read, in part, "We don't win this thing sitting on the sidelines. Excited to stand for truth with my fellow patriots and freedom fighters in D.C. today." During or after the riot, she posted a message that read, in part, "Pence is a traitor. We stormed the capital [sic]. An unarmed peaceful woman down the hall from us was shot in the neck by cops. It's insane here." In another message, apparently written after the riot, she wrote "We need a Revolution! We can accept an honest and fair election but this is NOT fair and patriots don't want to see their country brought into communism and destroyed over a lie."

*Bustle* Statement of Offense (ECF 25) at 4; Judgment (ECF 42).

Lastly, with the exception of her conduct on January 6, Ms. Schwemmer's conduct throughout her life as well as her conduct since she left Washington, D.C. on January 6, 2021 reflect that she is not a danger of recidivism.

---

[5] Those cases were affirmed by the D.C. Circuit against constitutional challenges. *See, United States v. Bronstein,* 849 F.3d 1101, 1107(D.C. Cir. 2017).

Moreover, with respect to general deterrence, being prosecuted and being subject to a sentence of probation is a substantial consequence that befits Ms. Schwemmer's conduct without unduly punishing her for the conduct of others, especially in the context of the First Amendment activities that gave origin to these events. *See, e.g., Gall v. United States,* 552 U.S. 38, 48 (2007) ("We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.")

## CONCLUSION

While the disruption that took place at the United States Capitol and violent conduct of some who entered the Capitol is reprehensible, Ms. Schwemmer should not be sentenced on the basis of the conduct of others as it is a fundamental principle of our system of justice, "that guilt is personal and that it ought not lightly to be imputed to a citizen who, like [Ms. Schwemmer] has no evil intention or consciousness of wrongdoing." *United States v. Dotterweich*, 320 U.S. 277, 286 (1943). For all these reasons, Ms. Schwemmer respectfully requests that the Court impose a term of probation. Such a sentence is reasonable and is "sufficient, but not greater than necessary" to comply with the purposes of sentencing as mandated by 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the instant memorandum was served via email on counsel of record and stand-by counsel on January 7, 2022.

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**